## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KNIGHTS OF COLUMBUS COUNCIL 2616, and JOSEPH P. SARGENT, | : | CIV. NO. 3:22-cv-01579(AWT) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| TOWN OF FAIRFIELD, ET AL., | : | |
| | : | |
| Defendants. | : | MAY 1, 2023 |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS' MOTION TO DISMISS

Defendants Town of Fairfield ("Town"), Anthony R. Calabrese, and Brian Nerreau, respectfully submit this memorandum in support of their Motion to Dismiss all counts of Plaintiffs' Complaint for mootness and for failure to state claims on which relief may be granted.

This action arose out of concern over the location of the Knights of Columbus' (the "Knights") yearly Christmas vigil in Fairfield.  For thirty-seven consecutive years, the vigil was held at the Fairfield Town Hall Green.  In 2020, during the height of the global pandemic, the Knights applied for the first time for a permit to hold the vigil at a new location, Sherman Green. The Town declined to approve the change in location, but allowed the Knights to conduct their vigil as usual at the Town Hall Green.  In 2021, the Knights again applied to change the location of the vigil, but the Town similarly declined.  On December 14, 2022, ahead of a meeting scheduled to discuss the Knights 2022 application, plaintiffs rushed to court seeking to enjoin defendants from preventing their desired change in location.  One week later, the 2022 application was approved, and the Knights were thus able to move their vigil to Sherman Green. Despite this outcome, plaintiffs have persisted forward with the current action.

I.     **FACTUAL ALLEGATIONS**

The Knights are a local council of the Catholic organization Knights of Columbus,

located in Fairfield, Connecticut.  Pl. Compl., at ¶ 2.  Joseph Sargent is a member of the Knights

and a resident of Fairfield.  Id., at ¶ 3.  Since 1983, the Knights have conducted an annual

Christmas vigil accompanied by a nativity scene in Fairfield.  Id., at ¶ 15.  The vigil begins on

December 23ʳᵈ and ends on Christmas morning, December 25ᵗʰ.  Id., at ¶ 23.  Each year, the

Knights apply for a Special Event permit via the Fairfield Parks and Recreation Department (the

"Department"), requesting to hold their vigil.  Id., at ¶ 26.  The Department is under the control

and authority of the Fairfield Parks and Recreation Commission (the "Commission").  Id., at ¶

28.  Anthony Calabrese is the Director of the Department; Brian Nerreau is the Chairman of the

Commission.  Id., at ¶¶ 6-7.  The Commission has created regulations concerning the use of

public parks; more specifically, Section 11-(a) of the regulations requires that all structures of

temporary or permanent nature, as well as all sponsored gatherings or functions, receive express

permission of the Commission.  Id., at ¶¶ 29-30.

Prior to 2020, as the vigil was being held in the same location every year, the Knights'

applications were approved without the need to appear before the Commission.  Id., at ¶ 27.  On

November 17, 2020, plaintiffs applied for the first time to hold their vigil at Sherman Green in

Fairfield.  Id., at ¶¶ 56-57.  On or about December 9, 2020, Department staff informed Mr.

Sargent that Mr. Calabrese had denied the application to hold the 2020 vigil on Sherman Green,

citing COVID-19 concerns.  Id., at ¶ 60.  The Department did give permission for Knights to

continue to conduct their 2020 vigil at Town Hall Green.  Id., at ¶ 61.

Following Mr. Sargent's request that the Commission review the Knights 2020

application, the Commission scheduled a hearing on December 16, 2020.  Id., at ¶¶ 78-79.  After

discussion, a motion to have the Knights 2020 application was not seconded, and the Knights were informed that their move to Sherman Green would not be approved.  Id., at ¶ 101.  The Knights thus held their 2020 vigil at Town Hall Green, as they always had in the past.  Id., at ¶ 102.

On August 21, 2021, the Knights again applied for permission to change the location of their vigil to Sherman Green.  Id., at ¶ 104.  The Knights' 2021 application was placed on the October 22, 2021, agenda.  Id., at ¶ 111.  The Commission vote resulted in a 4-4 tie, and the application was thus not approved, but the Knights were again permitted to hold their vigil at Town Hall Green.  Id., at ¶ 124.

On December 14, 2022, plaintiffs brought this current action seeking to enjoin defendants from preventing their desired change in location.  The Knights' 2022 application was heard at a scheduled Commission meeting, on December 21, 2022.  See Ex. A, Minutes.[1]  Following discussion, the move to Sherman Green was approved by a vote of 7-1, with one abstention.  See Minutes.

## II.    ARGUMENT

### A.    Legal Standards

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to move to dismiss a complaint for "lack of subject matter jurisdiction."  "A case is properly dismissed for lack of subject matter jurisdiction under Rule (12)(b)(1) when the district court lacks the statutory or

---

[1] Pursuant to Rule 201(b) of the Federal Rules of Evidence, defendants ask this Court to take judicial notice of the minutes for the December 21, 2022 meeting of the Town of Fairfield Parks and Recreation Commission, https://www.fairfieldct.org/filestorage/79/179/87435/114671/Minutes_12-21-2022_Final.pdf.  "The court may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Id.; see Porrazzo v. Bumble Bee Foods, LLC, 822 F. Supp. 2d 406, 411 (S.D.N.Y. 2011) ("[I]t is well-established that courts may take judicial notice of publicly available documents on a motion to dismiss.").

constitutional power to adjudicate it.  Lyons v. Litton Loan Servicing LP, 158 F. Supp. 3d 211,

218 (S.D.N.Y. 2016) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

"When a case becomes moot, the federal courts lack subject matter jurisdiction over the action."

Doyle v. Midland Credit Management, Inc., 722 F.3d 78, 80 (2013).  In determining

jurisdictional issues, the court may look outside the four corners of the complaint.  See Karlen ex

rel. J.K. v Westport Bd. Of Educ., 638 F. Supp. 2d 293, 298 (D. Conn. 2009).

Under Rule 12(b)(6), a pleading may be dismissed for "failure to state a claim upon

which relief can be granted."  To survive a Rule 12(b)(6) motion, a complaint must contain

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  Ashcroft v. Iqbal, 556 U.S 662, 678 (2009).  The court need not credit "threadbare

recitals of a cause of action's elements, supported by mere conclusory statements."  Id., at 663.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." Id., at 678.  In other words, "bald

assertions and conclusions of law will not suffice."  Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir.

1996).

**B.**      **Plaintiffs' Claims for Injunctive and Declaratory Relief Have Been Rendered**
          **Moot Following the Approval of the 2022 Application**

Following approval of the Knights' 2022 application to hold their vigil at Sherman

Green, plaintiffs' claims for injunctive and declaratory relief have been rendered moot and

should be dismissed.  Under Article III of the Constitution, federal courts have authority to

adjudicate only "Cases" and "Controversies", therefore, courts may not "decid[e] legal disputes

or expound[] on law in the absence of such a case or controversy."  Already, LLC v. Nike, Inc.,

568 U.S. 85, 90 (2013).  "No case or controversy exists, and a suit becomes moot, when the

issues presented are no longer 'live' or the parties lack a legally cognizable interest in the

outcome." <u>Chafin v. Chafin</u>, 568 U.S. 165, 133 S. Ct. 1017, 1019 (2013).  "The requisite

personal interest that must exist at the commencement of the litigation (standing) must continue

throughout its existence (mootness)." <u>U.S. Parole Commission v. Geraghty</u>, 445 U.S. 388, 397

(1980).

  "To have standing to seek injunctive relief, a plaintiff must demonstrate a 'real or

immediate' threat of future injury." <u>Carter v. CIOX Health, LLC</u>, 260 F. Supp. 3d 277, 287

(W.D.N.Y. 2017).  The plaintiffs "cannot rely on past injury to satisfy the injury requirement but

must show a likelihood that [they] . . . will be injured in the future." <u>Shain v. Ellison</u>, 356 F.3d

211, 215 (2d Cir. 2004) (internal quotation marks omitted).  "If, as a result of changed

circumstances, a case that presented an actual redressable injury at the time it was filed ceases to

involve such an injury, it ceases to fall within a federal court's Article III subject matter

jurisdiction and must be dismissed for mootness." <u>Janakievski v. Exec. Dir., Rochester

Psychiatric Ctr.</u>, 955 F.3d 314, 319 (2d Cir. 2020).

  The circumstances relevant to plaintiffs' claims for injunctive relief have clearly changed

since this action was filed.  Plaintiffs filed this action on December 14, 2022, seven days prior to

a Commission meeting already scheduled to address the Knights' 2022 application.  The

application to hold the vigil at Sherman Green was subsequently approved on December 21,

2022.  <u>See</u> Minutes.  Thus, plaintiffs have not and cannot allege any 'real or immediate' threat of

future injury that might properly be resolved by injunctive relief.

  This mootness concept was applied in <u>Connecticut Citizens Defense League, Inc. v.

Thody</u>, No. 21-CV-1156, 2023 WL 2687446, (D. Conn. Mar. 28, 2023).  In <u>Thody</u>, plaintiffs

brought constitutional claims regarding the administrative process for the issuance of pistol

permits.  After the permits were granted during the pendency of litigation, the court held that

plaintiffs' claim of future injury, that plaintiffs might be subjected to the same procedures upon

reapplying, was "too abstract for purposes of injunctive relief, which is designed to address

actual and imminent injury to a plaintiff." Id., at *8.

Plaintiffs' claims for declaratory relief have likewise been rendered moot.  "The general

rule is that declaratory relief operates prospectively to enable parties to adjudicate claims before

either side suffers great damages.  Thus, declarations that a defendant violated federal law in the

past are prohibited." Omar Islamic Center Inc. v. City of Meriden, No, 19-CV-00488, 2022 WL

4599150, at *10.  Accordingly, any claim for declaratory relief based on purported past

violations has been foreclosed following approval of the 2022 application.

> **C.**    **All of Plaintiffs' Claims Insofar as They Concern Denial of the 2020 Application Should Be Dismissed Because They Were a Valid Exercise of the Town's Discretion to Mitigate A Public Health Emergency**

To the extent that any of plaintiffs' claims allege violations regarding the 2020 application,

those claims should be dismissed, as the denial was a valid discretionary action by the Town to

mitigate a public health emergency.   "It is well settled that the police power retained by the states

empowers state officials to address pandemics such as COVID-19 largely without interference from

the courts.  Moxie Owl, Inc. v. Cuomo, 527 F. Supp. 3d 196, 200 (W.D.N.Y. 2021) (referencing

Jacobson v. Massachusetts, 197 U.S. 11 (1905)).  "Jacobson requires that courts refrain from

second-guessing state governments' responses unless there is 'no real or substantial relation'

between the actions and the public health and safety or the action is 'beyond all question, a plain,

palpable invasion of rights.'" Amato v. Elicker, No. 20-CV00464(MPS) (D. Conn. May 19, 2020)

(denying preliminary injunction, by which plaintiffs sought to stay enforcement of COVID orders

issued by Governor Ned Lamont and New Haven Mayor Justin Elicker).

The plaintiffs filed their application on November 17, 2020, during the height of the pandemic.  At the time defendants declined to approve the Knights' 2020 application, similar COVID-based restrictions were being nearly unanimously upheld as justifiable, in Connecticut and elsewhere.  See Moxie Owl, 527 F. Supp 3d at 201 ("[the principle from Jacobson] has been repeatedly reaffirmed this past year by a host of judicial voices, particularly in the context of constitutional challenges warranting rational basis review"); Amato v. Elicker, 534 F. Supp. 3d 196 (D. Conn. April 15, 2021); Casey v. Lamont, 338 Conn. 479 (2021); Hopkins Hawley LLC v. Cuomo, 518 F. Supp. 3d 705 (S.D.N.Y. 2021).

Here, plaintiffs were still allowed to conduct their 2020 vigil at Town Hall Green, as they had been for the past thirty-seven years.  It cannot reasonably be said that the decision to deny Knights' application to suddenly change location, in the middle of a pandemic, was "beyond all question, a plain, palpable invasion of rights".  The decision was squarely within the discretion afforded to state actors during public health emergencies, and any claims stemming from the denial of the Knights' 2020 application must be dismissed accordingly.

### D.    All of Plaintiffs' Facial Challenges to the Regulations Fail to State a Claim Upon Which Relief May Be Granted and Should Be Dismissed

Plaintiffs' facial challenges in Counts One through Four must also be dismissed.  "A facial challenge to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual."  Field Day, LLC v. County of Suffolk, 463 F.3d 167, 174 (2d Cir. 2006).  Section 11(a) of the Town's regulations is not the type of statute traditionally vulnerable to a facial challenge; it is not "directed narrowly and specifically at expression or conduct commonly associated with expression."  City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 760 (1988) (in contrast, finding a licensing system directed at the circulation of newspapers to be vulnerable to a facial challenge, and describing a law requiring the licensing of printers to be the

"archetypal censorship statute"); see Freedman v. State of Md., 380 U.S. 51 (motion picture

censorship statute); Talley v. California, 362 U.S. 60 (statute limiting distribution of leaflets).

Here, Section 11(a) includes the construction of tents, benches, shelters, and other structures,

at locations including beaches or marinas.  It can hardly be said that a statute covering the

construction of a bench at a marina is directed at expression or expressive conduct.  Further,

Sections 11(b) and (c) describe restrictions on alcoholic beverages, smoking and vaping.  Taken

together, Section 11 is most reasonably construed as a regulation on public health, safety, and

coordination, far from one that is "directed narrowly and specifically at expression".  "Regulations

of the use of a public forum that ensure the safety and convenience of the people are not inconsistent

with civil liberties but are one of the means of safeguarding the good order upon which civil

liberties ultimately depend."  Thomas v. Chicago Park Dist., 534 U.S. 316, 323 (2002) (internal

quotation marks omitted).  Because Section 11 is not a statute vulnerable to a facial challenge,

plaintiffs claim is legally insufficient and must be dismissed.

### E.  All of Plaintiffs' "As Applied" Challenges Fail to State a Claim Upon Which Relief May Be Granted and Should Be Dismissed

Plaintiffs' "as applied" challenges in Counts One through Four must be dismissed.  "The

essence of an as applied challenge [] is a claim that the manner in which a statute or regulation was

applied to a plaintiff in particular circumstances violated the Constitution, as for example where a

facially valid statute was applied to a plaintiff in a discriminatory fashion based on animus toward

the plaintiff's First Amendment protected views or activities."  Almengor v. Schmidt, 692 F. Supp.

2d 396, 397 (S.D.N.Y. 2010).

Plaintiffs appear to misunderstand the nature of "as applied" challenges.  Although these

challenges differ from facial challenges in that they do not look *exclusively* to the text of the statute,

the claim must still be grounded in the text of the statute itself.  See United States v. Grace, 461 U.S.

171 (1983) (statute making it unlawful to stand or parade in the Supreme Court building or grounds was unconstitutional *as applied* to the sidewalks surrounding the Supreme Court); <u>Tennessee v. Garner</u>, 471 U.S. 1 (1985) (provision permitting police officers to use all necessary means to effect arrest of fleeing defendants unconstitutional *as applied* to unarmed, non-dangerous suspects); <u>Nelson v. Krusen</u>, 678 S.W.2d 918 (1984) (two year statute of limitations on medical claims unconstitutional *as applied* to plaintiffs who could not discover injury during two year period).

Here, plaintiffs have failed to point to any portion of the Town's regulations that would render them unconstitutional as applied to plaintiffs' particular circumstance.  Assuming arguendo, that the regulations instead imposed a content neutral time restriction that limited gatherings to weekdays, plaintiffs might then have a claim that the regulations were unconstitutional as applied to religious groups.  But there is no such allegation here. Accordingly, all of plaintiffs' first amendment as applied challenges must be dismissed for failure to state a claim upon which relief could be granted.

### F.   Plaintiffs' Equal Protection Claim Should Be Dismissed

"There are two types of equal protection claims available under 42 U.S.C. § 1983: selective enforcement and class of one."  <u>Musco Propane, LLP v. Town of Wolcott</u>, 891 F. Supp. 2d 261, 271 (D. Conn. 2012), <u>aff'd sub nom. Musco Propane, LLP v. Town of Wolcott Planning & Zoning Comm'n</u>, 536 F. App'x 35 (2d Cir. 2013).

"To prevail on a claim of selective enforcement, the Second Circuit requires that a plaintiff show both (1) that he or she was treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious

or bad faith intent to injure a person." Harlen Ass. v. Inc. Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (internal quotation marks omitted).

The "similarly situated" element is "the *sine qua non*" of an equal protection claim based on selective enforcement; Goldfarb v. Town of West Hartford, 474 F. Supp. 2d 365, 368 (D. Conn. 2007). "The standard for determining whether another person's circumstances are similar to the plaintiff's must be … *prima facie* identical." Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005). Here, plaintiffs have failed to plead with any specificity that they are similarly situated to alleged comparators; plaintiffs only allege that other "private parties" have been permitted to use Sherman Green.

Further, plaintiffs crucially fail to acknowledge two significant differences between themselves and any alleged comparators. First, plaintiffs had already been granted permission to hold their vigil at the Town Hall Green, as they had been for the past thirty-seven years, and were instead seeking to *change* their desired location. Second, the Knights' overnight event was unlike any other recent event at Sherman Green. "[Of the] 162 events since 2019, [] 157 were either in the afternoon or concluded by 8 p.m. There were some events held from 5 p.m. to 9 p.m., however there were never any past 9 p.m … of the 162 events, only four of them went longer than four hours." Pl. Compl. at ¶ 115 (quoting Mr. Nerreau). Here, plaintiffs were seeking to hold a vigil that would span three days—a plain material difference from any other group that the Knights would allege was similarly situated.

Plaintiffs are likewise unable to prevail under a "class of one" theory. "A class-of-one claim exists where the plaintiff alleges that [it] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Analytical Diagnostic Labs, Inc. v. Kusel, 626 F. 3d 135, 140 (2d Cir. 2010) (internal quotation

marks omitted).  "Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and persons to whom they compare themselves."  Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59-60 (2d Cir. 2010).  Again, plaintiffs have failed to allege material similarity between themselves and others, alleging only that they are similarly a "private party".  That alone cannot be sufficient to state a claim for relief, particularly considering plaintiffs' unique status as an overnight applicant and the permission already granted by the Town to continue to conduct the vigil at Town Hall Green.  Because plaintiffs have failed to state a viable claim under either selective enforcement or class-of-one theories, their equal protection claim must be dismissed.

### G.    Plaintiffs' State Constitutional Claims Should Be Dismissed On the Same Grounds as Their Related Federal Claims, and Because the Connecticut Supreme Court Has Not Recognized a Private Right of Action Under the Respective Provisions

Plaintiffs' claims brought under Connecticut State Constitution, Article I, §§ 3, 4 and 14 must be dismissed.  First, the state constitutional claims should be dismissed on the same grounds that plaintiffs' related First Amendment and equal protection claims should be dismissed. Additionally, the Connecticut Supreme Court has not recognized a private right of action under any of the provisions sought by plaintiffs.

In Binette v. Sabo, 244 Conn. 23 (1998), the Connecticut Supreme Court recognized a "narrow cause of action for money damages under the Article I, §§ 7 and 9 [for illegal searches and seizures]."  Lopez v. Smiley, 375 F. Supp 2d. 19, 24 (D. Conn. 2005).  However, "the courts in this federal district asked to create a remedy under other state constitutional provisions [aside from Binette] have by-and-large declined to do so.  Doe v. Masoloni, No. 14-CV-00718, 2016 WL 59349, at *17 (D. Conn. 2016) (declining to exercise supplemental jurisdiction over claims brought under §§ 3 and 4 because the claims are "not well developed under Connecticut law" and the

Connecticut Supreme Court "did not intend to create a cause of action for money damages for every alleged violation of the Connecticut State Constitution"). See Wylie v. West Haven, No. 06-5006403, 2010 WL 2196493, at *3 (Conn. Super. Ct. Apr. 21, 2010) ("there is no recognized private right of action under Article I, § 14"); Torres v. Armstrong, No. 99-0427057, WL 1178581 (Conn. Super. Ct. Sept. 6, 2001) (refusing to recognize claims brought under Article I §§ 4 and 14, inter alia); Jennings v. Town of Stratford, 263 F. Supp. 3d 391, 409 (D. Conn. 2017) ("Connecticut courts have rejected the argument that free-speech provisions of the Connecticut Constitution [including § 14] are independently actionable apart from the cause of action that is prescribed under § 31-51q.") (citing cases).

Because plaintiffs' state constitutional claims fail for the same reasons as their related claims, and further because the Connecticut Supreme Court has not recognized a private cause of action under either §§ 3, 4, or 14, these claims must be dismissed.

**H.     Plaintiffs' Claim under the Connecticut Freedom of Religion Act Should Be Dismissed**

Plaintiffs' claim brought under the Connecticut Freedom of Religion Act must also be dismissed as legally insufficient, as it is not covered under § 52-571b.  In Cambodian Buddhist Soc. of Connecticut, Inc. v Planning and Zoning Com'n of Town of Newtown, 285 Conn. 381 (2008), the Connecticut Supreme Court underwent its most thorough discussion of the scope and interpretation of the statute: "§ 52-571b was enacted in response to the United States Supreme Court's decision in Employment Division. . .".  Cambodian Buddhist, 285 Conn. at 423.  In Employment Division, Dept. of Human Resources of Oregon v. Smith, 494 U.S. 872 (1990), the Supreme Court held that a state statute criminalizing drug use was not required to make an exemption for the religious use of peyote.  As the Connecticut Supreme Court explained in Cambodian Buddhist, § 52-571b was Connecticut's response, ensuring that generally applicable

12

*prohibitions* against conduct could not burden religious exercise.  Id., at 883-84.  Here, the Town's regulations in question are not of the type contemplated by the Connecticut Supreme Court as falling under the protection of § 52-571b—there is no generally applicable prohibition against conduct.[2]

Additionally, Cambodian Buddhist declined to apply § 52-571b to zoning or land use regulations.  "We do not believe either that the legislature intended that the construction of a place of worship would constitute religious exercise or that … the application of land use regulations that are intended to protect the public health and safety to such a use generally would be subject to strict scrutiny under the statute."  Id., at 425; see also Omar Islamic Center Inc. v. City of Meriden, No, 19-CV-00488, 2022 WL 4599150, at *17 (D. Conn. Sep. 30, 2022) ("[t]his Court is bound by the Connecticut Supreme Court's interpretation of Connecticut law, and must therefore hold that, just as the Buddhist society's request to build a temple on its land was not an 'exercise of religion' under the CRFA, Plaintiff's request to build a mosque on the Property is likewise not protected under the CRFA").  While the present case is admittedly not a zoning case, there is no indication that Connecticut intended § 52-571b to apply to even temporary uses of land such as the one proposed in the Knights' application.  And further, as discussed above, there is no generally applicable prohibition against conduct at issue here.  Plaintiffs' claim must therefore be dismissed as they have not alleged a claim that can be pursued under § 52-571b.

---

[2] For example, if plaintiffs wanted to challenge 11(c) of the regulations, *prohibiting* smoking and vaping on Town beaches, as a burden on their religious exercise, they might have a better argument.  This would be similar to the restriction on the use of peyote contemplated in Employment Division, which the Connecticut Freedom of Religion Act wanted to rectify.

**I.      All Claims Against Officers in their Official Capacity Should Be Dismissed as Redundant to the Claims Against the Town**

Plaintiffs' suit against Anthony Calabrese and Brian Nerreau in their official capacities should be dismissed as they are the legal equivalent of claims against the municipality itself.  As the Supreme Court held in Brandon v. Holt, 469 U.S. 464, 472 (1985), "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."  In other words, "[i]t is not a suit against the official personally, for the real party in interest is the entity."  Kentucky v. Graham, 473 U.S. 159 (1985); see also Reynolds, 506 F.3d at 191 ("An official capacity suit against a public servant is treated as one against the governmental entity itself.").  Where, as here, the municipality is already party to the lawsuit, claims against governmental officials sued in their official capacity should be dismissed.  Doe v. Claiborne Cnty., Tenn., 103 F.3d 495, 509 (6th Cir. 1996).

**III.      CONCLUSION**

For the foregoing reasons, defendants respectfully move this court to dismiss all claims directed against them in plaintiff's Complaint.

<div style="margin-left:40%">

DEFENDANTS, TOWN OF FAIRFIELD,
ANTHONY R. CALABRESE, AND
BRIAN NERREAU

BY/ss/ James N. Tallberg
James N. Tallberg
Federal Bar No.: ct17849
Karsten & Tallberg, LLC
500 Enterprise Drive, Ste. 4B
Rocky Hill, CT 06067
T: (860)233-5600
F: (860)233-5800
jtallberg@kt-lawfirm.com

</div>

## **CERTIFICATION**

I hereby certify that on May 1, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/ss/ James N. Tallberg
James N. Tallberg